### STREET v. MARYLAND CENT. RY. CO. et al.

(Circuit Court, D. Maryland. September 25, 1893.)

RECEIVERS—APPOINTMENT AND REMOVAL.

> While the suggestions and recommendations of persons who substantially own property about to be intrusted to a receiver are of great weight with the court in making an appointment, yet the court will not remove a railroad receiver, whose management has been able, efficient, and impartial, at the request of the controlling stockholder and his associates, when the litigation is not for the purpose of foreclosing a mortgage, but is instituted by a minority stockholder on the ground that the bonded indebtedness and the issues of stock are being vastly increased without any corresponding increase of assets, and mainly for the benefit of the controlling stockholder.

In Equity. Suit brought by Joseph M. Street against the Maryland Central Railway Company, the Baltimore & Lehigh Railroad Company, the Baltimore Forwarding & Railroad Company, the Mercantile Trust Company of Baltimore, trustee, and John H. Miller, Moses H. Houseman, and William Gilmor. Heard on motion to remove a receiver. Denied.

Stephenson A. Williams, for complainant.

John P. Poe, R. R. Boarman, N. P. Bond, D. G. McIntosh, and R. M. Venable, for respondents.

Before BOND, Circuit Judge, and MORRIS, District Judge.

BOND, Circuit Judge. The motion before us is the application of the Baltimore & Lehigh Railroad Company and John Henry Miller and Moses H. Houseman for the removal of William H. Bosley from the receivership of the Baltimore & Lehigh Railroad Company and the Baltimore Forwarding & Railroad Company, to which position he was appointed in this case by the circuit court for Hartford county on 17th May, 1893. The grounds for removal of this receiver stated in the petition of Miller, Gilmor, and Houseman are (1) that Bosley was improperly appointed; (2) that his appointment was the result of an unlawful conspiracy between the complainant, Street, Crumpton, and Kennefeck; (3) that he has appointed Crumpton general manager of the railroad, although aware that Crumpton is incompetent; (4 and 5) that he desires to promote certain railroad schemes not in the interest of the Baltimore & Lehigh Railroad Company, and has unfairly reported the condition of its property; (6) that he has not sufficient experience to enable him to conduct and manage the property.

The petition of the Baltimore & Lehigh Railroad Company states substantially the same reasons, and also asks for Bosley's removal

upon the additional ground that as the court of common pleas for York county, Pa., has appointed a different person, Mr. Taylor, as receiver to operate that portion of the railroad which is in Pennsylvania, the evils of a divided management and the want of co-operation is disastrous in its results.

Petitions have also been filed by holders of the first and of the general mortgage bonds of the Maryland Central Railway, by holders of the bonds of the York & Peach Bottom Railroad Company, all uniting in asking that the whole railroad may be brought under the control of one receiver.

In considering the matters brought before us by these petitions, it is but right to say that, however the appointment of Mr. Bosley may have been brought about, there is no testimony which leads us to believe that he was a party to any combination of persons in any alleged scheme to force the railroad into liquidation for ulterior ends. He does not appear to have done more than agree to accept the receivership, if appointed. He does not appear to have had any previous connection with the property or with the parties. As to his performance of the duties of the receivership during the four months since his appointment, he appears to have acted with energy, ability, and good judgment. He has had previous experience in like positions, and has the confidence which experience gives in meeting the difficulties in running a railroad insufficiently equipped, in need of repairs, embarrassed by litigation, and pressed by creditors. Nothing has been made to appear against him showing partiality or favoritism, or a disposition to lend himself to any sinister proceedings of any litigant. His appointment of Crumpton has been criticised, Crumpton being one of those who assisted in getting up the case in which the receiver was appointed, but Crumpton had been general manager of the railroad from July, 1891, to April, 1893, and was second vice president of the forwarding and railroad company at the time of Bosley's appointment, so that up to that time he had the confidence of those who now object to him, and was kept in office by them. Mr. Bosley's business qualifications, his freedom from connection with any previous transactions of the defendants, the knowledge of the affairs of the defendant corporations which he has acquired in the four months since his appointment, make it, in our opinion, desirable that he should be retained.

It is true that the suggestions and recommendations of those who substantially own the property intrusted to a receiver should weigh with the court in selecting one. In this connection, however, it is proper to consider the nature of this proceeding and the charges of the bill of complaint. This is not the case of the appointment of a receiver merely to preserve and keep going a railroad pending the obtaining of a decree for sale. It is the complaint of a stockholder who charges that the value of his shares of the corporate property have been diminished by the improper appropriations of the funds of the corporation by those who have had control of it. It is charged that large amounts of its bonds issued by the defendants have been unlawfully diverted to private uses, and, although issued, are not in the hands of innocent holders, and that the corporate

stock has been enormously increased solely for the profit of these same persons or one of them.

The facts charged are in substance these: That the Maryland Central Railway Company was organized in 1888 with 4,000 shares of stock, of the par value of $400,000, and subject to a mortgage of $850,000; that it has no property now which it did not have then, except the stock which it holds of the York & Peach Bottom Railroad, which is a narrow-gauge railroad, 40 miles in length, subject to a mortgage of $250,000; that since 1888 the Maryland Central Railway Company has been organized as the Baltimore & Lehigh Railroad Company, with a capital stock of 30,000 shares, of the par value of $3,000,000, of which the defendant Miller holds over 23,000 shares; that the original mortgage of $850,000 has not been reduced, and there has been put upon the property an additional mortgage under which $3,500,000 of bonds may be issued, of which $900,000 have been actually issued, nearly all of which have been given to the defendant Miller; that these bonds were voted to Miller for certain purposes, not one of which he has accomplished, except that he has obtained the stock of the York & Peach Bottom Railroad at a cost in money of about $150,000; that for this great increase in bond indebtedness there is no increase of assets, but there is a considerable floating debt and great financial embarrassment, and that the railroad and equipment have deteriorated; that during all this time Miller has held a large majority of the stock, which has enabled him to appoint and control the directors; and that he holds nearly all the stock of the forwarding company, to which the road has been leased.

The facts alleged can hardly be said to have been denied by the answers of the defendants, although they deny all imputation of fraud, and they deny the right of complainants to demand an investigation. Under such circumstances, as it is the legality and bona fides of the transactions by which $900,000 of the general mortgage bonds have been issued to Miller, and as it is his management of the corporate finances and property, which is to be inquired into, it is obvious that it may be no objection to a receiver, otherwise unobjectionable and competent, that he is not acceptable to the defendant Miller, and those who have been with him in his management, and it is apparent that the holders of general mortgage bonds obtained through Miller may not be unbiased in their attitude towards the investigation. But the holders of the $850,000 first mortgage bonds issued by the Maryland Central Railroad Company, which are conceded to be a first lien, have an undisputed and vital interest in the property not affected by any charges in the bill, and their recommendations are entitled to weight. From representations on their behalf, it appears that they do not object to Mr. Bosley, except so far as the hostility of others to him may prevent the whole road from being brought under one receivership and operated under one management. If the whole road were within our exclusive jurisdiction, we should appoint Bosley as sole receiver for the whole road, but under the present circumstances the petitions for his removal now presented must be dismissed.